IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE HARVEY,               )<br>                                        )<br>        Plaintiff,              )<br>                                        )<br>    vs.                             )<br>                                        )<br>JOE McGRATH, et al.,      )<br>                                        )<br>        Defendants.          )<br>_____ ) | No. C 04-3998 TEH (PR)<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT<br><br>(Doc # 13) |

     Dale Harvey, a prisoner of the State of California, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 seeking damages. Defendants move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to qualified immunity as a matter of law. Harvey did not file an opposition.

**BACKGROUND**

     This action concerns Harvey's placement and retention in administrative segregation ("ad-seg") in Pelican Bay State Prison. The following facts are undisputed, unless otherwise noted.

     On June 21, 2003, correctional officer Broadbent was stabbed by an inmate on the roadway of B facility. Harvey was present at the scene when the stabbing occurred. On June 27, 2003, Harvey was placed in ad-seg pending an investigation into the possible conspiracy

to murder a correctional officer.

Harvey was issued a California Department of Corrections Form 1030, Confidential Information Disclosure Form, which stated that prison officials had received information that Harvey was involved in the conspiracy to murder Broadbent.  The confidential information, submitted under seal, shows that prior to the incident, Harvey had been associated with inmates involved in prison gang activity.  The information also shows that prior to the stabbing, Harvey had expressed displeasure with prison staff due to changes in the facility program, and had become increasingly disrespectful to staff.  Prison investigators also obtained confidential information that Harvey had stated that there was a "green light on staff" in his unit.  Prison officials were concerned that Harvey may have been involved in, or had knowledge of, the stabbing.  During an interview while he was in ad-seg, Harvey admitted that he was present at the scene of the stabbing and had observed the stabbing.  He also admitted that he was a member of a street gang, and that should an officer ever disrespect him, he would not hesitate to assault the officer.

On July 2, 2003, Harvey's placement in ad-seg was reviewed by the Institutional Classification Committee (ICC).  The ICC, which included defendants, decided to retain Harvey in ad-seg on the grounds that the investigation into Broadbent's attempted murder was still pending.  The ICC also referred Harvey to the Classification Service Representative (CSR) for a 90 day ad-seg extension.  The ICC reviewed Harvey's retention in ad-seg three times: on July 16, 2003, October 1, 2003, and December 16, 2003.  Each time, the ICC elected to retain Harvey in ad-seg for 90 day extensions pending the completion of the investigation into Broadbent's attempted murder.  On January 7, 2004, the ICC released Harvey from ad-seg because the investigation into the stabbing had been concluded and Harvey was no longer deemed a focus of the investigation.

In its initial order of review, the court dismissed Harvey's due process and Eighth Amendment claims, but found that Harvey's allegations that his placement in ad-seg was

2

1 based on racial discrimination stated a cognizable § 1983 claim for damages against S.
2 Wheeler and L. Polk for violation of the Equal Protection Clause.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is properly granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted).

Where, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537. When the moving party has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it

1 is based on personal knowledge and sets forth specific facts admissible in evidence. See
2 Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's
3 verified complaint as opposing affidavit where, even though verification not in conformity
4 with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and
5 correct, and allegations were not based purely on his belief but on his personal knowledge).
6 The complaint here has a verification section that, liberally construed, amounts to a
7 statement that the complaint is made under penalty of perjury. The complaint therefore is
8 among the evidence that will be considered.

9       The court's function on a summary judgment motion is not to make credibility
10 determinations or weigh conflicting evidence with respect to a disputed material fact. See
11 T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The
12 evidence must be viewed in the light most favorable to the nonmoving party, and the
13 inferences to be drawn from the facts must be viewed in a light most favorable to the
14 nonmoving party. See id. at 631.

15 **EQUAL PROTECTION CLAIM**

16       Harvey claims that his placement in ad-seg was based on racial discrimination in
17 violation of the Fourteenth Amendment's Equal Protection Clause.
18       Proof of racially discriminatory intent or purpose is required to uphold a racial
19 discrimination claim; the Equal Protection Clause of the Fourteenth Amendment is not
20 violated by unintentional conduct which has a disparate impact on minorities. See
21 Washington v. Davis, 426 U.S. 229, 239-40 (1976). Discriminatory intent may be proved
22 by direct or circumstantial evidence. See Lowe v. City of Monrovia, 775 F.2d 998, 1011
23 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986). Where a
24 plaintiff relies solely upon instances of allegedly disparate treatment, he must establish a
25 "clear pattern, unexplainable on grounds other than race." Arlington Heights v. Metropolitan
26 Housing Corp., 429 U.S. 252, 266 (1977).

27
28       4

1    Under the undisputed facts in the record, Harvey's segregation was not based on
2 racial discrimination.  Instead, his placement in ad-seg was based on his involvement in
3 various incidents which occurred leading up to the attempted murder of officer Broadbent.
4    After the stabbing on June 21, 2003, prison officials began to investigate whether or
5 not Harvey should be segregated.  Between June 21 and June 27, 2003, when Harvey was
6 placed in ad-seg, officials assessed various prison records.  These records indicated
7 Harvey's possible affiliation with Broadbent's stabbing.  In the months prior to the stabbing,
8 Harvey had been associated with prison gang members and had become increasingly
9 disrespectful toward prison officials and staff.  Officials had obtained confidential
10 information that Harvey had stated "there was a green light" on staff in his unit.  This
11 information gave officials sufficient reason to suspect that Harvey was connected to the
12 attempted murder.  Accordingly, officials determined Harvey should be placed in ad-seg
13 pending a further investigation into the conspiracy to murder a correctional officer.
14    The prison officials' decision to place and retain Harvey in ad-seg pending an
15 investigation was based on legitimate penological interests.  In Turner v. Safley, 482 U.S. 78
16 (1987), the Court reiterated the need for judicial deference to the problems of prison
17 administration.  The Court held that when a prison regulation or practice impinges on
18 inmates' constitutional rights, the regulation or practice is valid if it is reasonably related to
19 legitimate penological interests.  Id. at 89.
20    Harvey's placement in ad-seg pending investigation served the purpose of furthering
21 prison safety for both prison staff and other inmates.  Harvey was "deemed a threat to the
22 safety and security of [the] institution if [he] were to remain in the General Population."
23 Reasons for Placement, Cattermole Decl., Ex. C.  There was a valid, rational connection
24 between placing Harvey in ad-seg and the legitimate government interest put forward to
25 justify it.  That is, Harvey was only placed in ad-seg to ensure prison safety.  As soon as it
26 was determined that Harvey was not affiliated with the stabbing, he was released from ad-seg

5

1  to the general population.

2       Harvey has not raised a triable issue of fact that his segregation was based on racial
3  discrimination. His placement in ad-seg was based on evidence of his possible connection
4  to the attempted murder, rather than due to discrimination against black inmates in Pelican
5  Bay. The fact that Harvey was suspected of participating in the attempted murder plan was
6  explainable on grounds other than race: the undisputed evidence shows that he had become
7  increasingly hostile to prison guards over the preceding months, he was on the scene when
8  the stabbing occurred, and he had previously threatened violence toward prison officials.
9  Harvey may have thought his segregation to be the result of his race, but his
10 misinterpretation is not evidence. His placement in ad-seg resulted from his suspected
11 affiliation with the stabbing.

12      Harvey's conclusory allegations that only black inmates were suspected in the
13 attempted murder and placed in ad-seg, does not merit a different conclusion. See Leer v.
14 Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations insufficient to defeat
15 summary judgment). His allegations are not enough to put into question the valid reasons
16 for which he was placed in ad-seg. There is no genuine issue of material fact on Harvey's
17 equal protection claim. Defendants are entitled to summary judgment as a matter of law.
18 See Celotex Corp., 477 U.S. at 323.

6

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Doc # 13) is GRANTED.

The clerk shall enter judgment in defendants' favor and against plaintiff, and shall close the file.

SO ORDERED.

Dated:  December  6  , 2005

_____
THELTON E. HENDERSON
United States District Judge